AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, SSA COUNCIL 220, AFL–CIO, et al., Petitioners,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 86–1729.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 22, 1987.

Decided Feb. 23, 1988.

Anne M. Wagner, with whom Mark D. Roth, Washington, D.C., was on the brief, for petitioners.

Arthur A. Horowitz, Deputy Solicitor, Federal Labor Relations Authority, with whom Ruth E. Peters, Solicitor, William E. Persina, Deputy Solicitor and Elsa D. Newman, Attorney, Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.

Before WALD, Chief Judge, MIKVA, Circuit Judge, and McGOWAN,* Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

In January 1981, two Texas district offices of the Social Security Administration ("SSA") implemented new "accountability plans" for employee assessment developed in accordance with the Dallas Regional Personnel Guide for Supervisors ("the Guide"). SSA Council 220 ("the National Council") of the American Federation of Government Employees ("AFGE") and two of its affiliated Locals complained that the SSA violated the Federal Labor–Management Relations Act, 5 U.S.C. §§ 7101 et seq. (1982 & Supp. III 1985) ("the Act") by unilaterally implementing the plans. The Federal Labor Relations Authority ("FLRA" or "the Authority") concurred in the determination

of the Administrative Law Judge ("ALJ") that the SSA had improperly failed to bargain over implementation of the plans. Petitioners now challenge the Authority's decision to reverse the ALJ's award of *status quo ante* ("SQA") relief. We affirm the FLRA's decision that the SSA need not invalidate the accountability plans or destroy employee assessments already completed under those plans. However, we vacate that part of the FLRA's decision requiring only prospective bargaining over arrangements for employees adversely affected by the implementation of the plans. We remand for determination of whether the ALJ's direct order to make whole such employees should be reinstated.

I.

In 1980, the Dallas Regional Office of the SSA promulgated the Guide. It provided a framework for the development by the district offices of "accountability plans" for evaluating employee performance. The Guide was prepared by collating policies scattered among various guides, manuals, and directives. The Guide was forwarded to the Dallas Regional district offices on the understanding that precise evaluation standards and numerical goals would be tailored to work performed at the district level.

In April 1980, Dallas Regional SSA Commissioner McSteen wrote AFGE Dallas Regional Vice President Overturf asking for comment on a draft of the Guide. At the direction of the National Council, Overturf requested negotiations over the Guide. Before replying, McSteen awaited FLRA decisions in two cases expected to consider the negotiability of employee evaluation procedures. On July 31, the Authority decided that appraisal systems are subject to a duty to bargain under some circumstances but that performance standards are nonnegotiable. See *National Treasury Employees Union and Department of the Treasury, Bureau of Public Debt*, 3 F.L.R.A. 769 (1980) and *AFGE, AFL–CIO, Local 32*

---

* Judge McGowan concurred in the result of this case but died before the completion of the opinion.

*and Office of Personnel Management, Washington, D.C.,* 3 F.L.R.A. 784 (1980). On August 13, McSteen wrote to bring those decisions to the union's attention and to inform Overturf that implementation of the Guide was planned in early September. The ALJ determined that McSteen "expected the Union to make some proposals." See 23 F.L.R.A. 827, 835. However, because Overturf was attending a national caucus, he did not answer the letter until after the deadline had passed and the Guide was distributed to the district offices. In his response of September 8, Overturf expressed the union's view that negotiations over evaluations should take place at the national level. McSteen replied that the duty to bargain had been completely discharged at the regional level by the August letter and the decision to await counterproposals.

Meanwhile, employees at the McAllen and El Paso District Offices were invited to meet with SSA officials to make suggestions concerning development of office accountability plans under the Guide. The El Paso District manager invited Local officials to be present at the meeting. At McAllen, the Local was not specifically informed of this event, although certain union officials received notice as employees. Before the final "accountability plans" were put into effect, SSA officials at both district offices denied requests by union officials to negotiate over "implementation and adverse effects" of the new evaluation procedures. The office managers stated they had been instructed not to negotiate because the duty to bargain had been discharged at the regional level.

In the spring of 1981, the National Council and the Locals filed complaints against the Dallas Regional Office and the two district offices. They alleged multiple violations of the Act, including failure to bargain over "impact and implementation" of the Guide under the statutory provision requiring that "procedures" and "appropriate arrangements for employees adversely affected by the exercise of any [management] authority * * * shall be negotiable." §§ 7106(b)(2) and (3). After the cases were consolidated for hearing, the ALJ determined that "[n]o failure to bargain in good faith [could] be found" with respect to the Guide itself because any duty to bargain over the substance of the Guide was discharged when the Regional Office afforded the AFGE Regional Vice President a 20–day opportunity to submit counterproposals prior to implementation. 23 F.L.R.A. at 842. However, the ALJ determined that a substantial change in working conditions giving rise to a duty to bargain occurred "when the district offices implemented the plans they formulated, pursuant to the Guide." 23 F.L.R.A. at 840. She held that the Dallas Region violated sections 7116(a)(1) and (5) of the Act by directing the district offices to implement the Guide without bargaining over "impact and implementation." The McAllen and El Paso District Offices were held to violate § 7116 by dealing directly with employees and bypassing the union representatives. Additionally, the ALJ found the McAllen Office in violation of § 7114(a)(2)(A) and §§ 7116(a)(1) and (8) for conducting formal discussions with employees without properly notifying the union representatives or affording them the opportunity to be present. The ALJ ordered a SQA remedy requiring the SSA to withdraw the accountability plans, destroy all documentation prepared under the plans, bargain over new plans prior to implementation, and "[m]ake whole any employees adversely affected by such accountability plans consistent with applicable law and regulations." 23 F.L.R.A. at 850.

On review, the Authority agreed there was no violation of a duty to bargain over the Guide, but indicated this was because "management had a right to issue the [Guide], which was formulated pursuant to the mandate of the Civil Service Reform Act (1978)." 23 F.L.R.A. 807, 815. The FLRA affirmed that the SSA district offices had violated the duty to bargain over "impact and implementation" and had committed violations with respect to bypass and failure to give notice. Relying on its previous decision in *Federal Correctional Institution and American Federation of Government Employees, Local 2052,*

*AFL–CIO,* 8 F.L.R.A. 604 (1982) (*"FCI"*) concerning SQA remedies for "impact and implementation" bargaining violations, the FLRA declined to affirm the ALJ's order to withdraw the accountability plans and to destroy all evaluations of employees conducted under the new guidelines. The Authority issued a prospective bargaining order directing the parties to negotiate over the manner in which employees would participate in preparation of new employee accountability plans. The Authority also specifically ordered bargaining over appropriate arrangements for employees adversely affected by implementation of the illegal performance appraisals.

The FLRA determined that a SQA remedy was "neither required nor necessary in order to effectuate the purposes and policies of the Statute." The Authority stated that this conclusion was reached by "balanc[ing] the nature and circumstances of the violations against the degree of disruption in Government operations that would be caused by such a remedy" in accordance with the various factors set forth in *FCI.* 23 F.L.R.A. at 815. In *FCI,* the Authority indicated that the determination whether to grant a SQA remedy in cases of violations of the duty to bargain over "impact and implementation" should involve consideration of 1) whether and when notice was given to the union; 2) whether and when the union requested bargaining; 3) the willfulness of agency conduct; 4) the nature and extent of the impact experienced by adversely affected employees; and 5) to what degree a SQA remedy would disrupt or impair the efficiency and effectiveness of the agency's operations.

In its analysis under *FCI* the FLRA noted that the union was on notice of the agency's intent to issue the Guide, although it's request to bargain was denied. The Authority also stated that withdrawal of the accountability plans and the destruction of employee evaluations "would seriously disrupt the efficiency of the agency's operations." 23 F.L.R.A. at 815. The Authority predicted that aggrieved employees would likely be made whole through prospective bargaining over "appropriate arrangements" for employees adversely affected. On petition for review to this court, the union requests reinstatement of the SQA remedy.

## II.

Petitioners attack the FLRA's remedial order on several fronts. First, they reject the Authority's "two-tiered" approach to remedies reflected in its decision to adopt the *FCI* balancing test for implementation bargaining violations. They contend that denial of a SQA remedy for failure to bargain over implementation renders that bargaining right "meaningless." According to petitioners, there is no reason to routinely grant SQA relief for failure to negotiate over changes not within management's § 7106(a) authority while applying a "balancing" test for violations of the duty to negotiate imposed by §§ 7106(b)(2) and (3), since the statute supports no such distinction between these bargaining rights. The petitioners also contend the FLRA's decision was arbitrary and capricious because the Authority did not sufficiently justify its conclusion that a SQA order would interfere with smooth agency functioning.

## A.

■ The FLRA is granted broad discretion to fashion remedies for violations of the Federal Labor–Management Relations Act. See § 7105(g)(3) (allowing the Authority to order "any remedial action it considers appropriate to carry out the policies" of the Act). Accordingly, our review of the FLRA's remedial determination is highly deferential, and we will uphold a remedial order of the FLRA "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Professional Air Traffic Controllers Organization v. FLRA,* 685 F.2d 547, 585 (D.C.Cir.1982) (citing *Virginia Electric & Power Co. v. NLRB,* 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943)).

The Act imposes on the Authority a clear duty to vindicate employee bargaining rights by making whole employees adverse-

ly affected by bargaining violations. Section 7118(a)(7) of the Act expresses in mandatory terms the statute's policy to remedy each violation to the fullest possible extent by providing that the Authority "shall * * * order" some combination of relief, including renegotiation with retroactive effect, and back pay with reinstatement, "or such other action as will carry out the purpose of this chapter." § 7118(a)(7)(D). In determining whether adoption of the *FCI* balancing test and its application in this case offend this paramount goal of the Act, our review must be confined to consideration of whether the FLRA's action was "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 7123(c) (directing review of the Authority's orders in accordance with § 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706 (1976)).

We decline to reject outright the Authority's *FCI* "balancing" approach as inconsistent with the policies and purposes of the Act. We do not deprecate the importance of all aspects of employee bargaining rights, or the courts' clear duty to protect them vigilantly. Nevertheless, there is good reason why the *FCI* test mandates careful consideration of any impact on agency efficiency when awarding SQA relief for failure to negotiate over implementation. In cases where a proposed change in working conditions is fully negotiable, a remedy for failure to bargain will not ordinarily result in measures which interfere with management prerogatives. In contrast, a SQA award for deprivation of §§ 7106(b)(2) and (3) rights will often "disrupt" the agency by usurping the authority conferred on management by § 7106(a). (Compare, for example, the effect of a SQA remedy for unilateral modification of employee health benefits—a matter fully negotiable because not within management's exclusive control under § 7106(a)—with the derogation of management's role necessitated by a SQA order to discard years of employee evaluations.)

It is important to remember that Congress conferred § 7106(a) rights on management to promote the expeditious and smooth operation of government agencies. By focusing on agency efficiency in mediating the frequent conflicts between employee rights and management prerogatives generated by SQA orders for "implementation" violations, the *FCI* test respects management's statutory authority only when government efficiency really is jeopardized. For this reason, we believe the *FCI* framework for reconciling competing statutory aims is reasonable and its application here is appropriate.

**B.**

We do not agree with petitioners that the FLRA was required to explain at greater length its refusal to order a SQA remedy involving invalidation of employee evaluations or withdrawal of existing accountability plans. Common sense dictates that destruction of six years of employee assessment files would produce chaos in the personnel system and might eventuate in unfairness to many employees. Moreover, the district managers' refusal to negotiate implementation was not willful but was based on the mistaken belief that the obligation to bargain had been completely discharged. Also, the union was notified at the outset of the SSA's intent to implement the Guide. These additional *FCI* factors do not weigh in favor of this SQA measure or warrant reversal of this aspect of the remedial order.

**C.**

We vacate the FLRA's decision to order prospective bargaining in lieu of direct individualized relief for adversely affected employees, and remand for fuller consideration under *FCI* of this aspect of the ALJ's order. The Authority erred in the manner in which it applied the *FCI* criteria; both parties compounded the error in their presentations before this court.

In the briefs and at oral argument, the parties proceeded on the assumption that either the SQA remedy or the prospective bargaining order must be applied across the board. The petitioners ask us to overturn the FLRA's order *in toto*, just as the Authority urges us to affirm it. This "all

or nothing" approach appears to us neither necessary nor likely to best effectuate the purposes of the Act. The optimal balance of the Act's competing interests is more precisely achieved by subjecting each component of the ALJ's remedial order to separate scrutiny under *FCI*.

The Authority abused its discretion by failing to look closely at the impact on agency operations of each element of the SQA remedial scheme. In evaluating the extent of agency disruption under *FCI*, the Authority only considered the impact of destruction of evaluations and withdrawals of accountability plans. The Authority then lumped all components of the remedy into a comprehensive prospective bargaining order, directing negotiation concerning redress of employee harm as well as implementation of new plans. The FLRA did not analyze the impact of the ALJ's order requiring the agency to "make whole any employee adversely affected" by the use of the accountability plans. Accordingly, the FLRA has not justified its decision to order prospective bargaining in lieu of this portion of the remedy.

When this element of the original order is independently evaluated using the *FCI* criteria, the balance appears to favor SQA relief. The award of back pay or other individualized equitable relief through a grievance procedure would not appear to disrupt agency operations to a greater extent than determination through prospective bargaining. While the impact of the illegal evaluation procedures on employees as a group may be "minimal" because comparatively few are adversely affected, the impact is *not* "minimal" on those employees who would qualify for this aspect of the "make whole" remedy by demonstrating an adverse effect on themselves. These considerations would appear to favor SQA relief rather than the less certain redress of prospective bargaining.

The propriety of this result is also buttressed by the discussion in a recent decision of this court, *AFGE v. FLRA*, 785 F.2d 333, 336 (D.C.Cir.1986) (per curiam). Noting that "Congress intended the FLRA's role in adjudicating unfair labor practice cases in the federal sector to be similar to that of the NLRB's in the private sector", this court observed that "[e]ven when *status quo ante* relief is denied in cases of undue hardship, the NLRB will typically grant monetary relief, such as backpay, in addition to any order to bargain." *Id.* at 337 (citing *Great Chinese American Sewing Company v. NLRB*, 578 F.2d 251 (9th Cir.1978)).

■ We read these comments as expressing a weighty preference in favor of a direct grant of individualized "make whole" relief—especially in the form of a monetary award—for losses actually suffered by employees. This preference is justified precisely because such individualized relief is unlikely to be as disruptive as a sweeping institutional remedy. The foregoing analysis makes clear that an order omitting the full measure of monetary relief will rarely withstand scrutiny, even under an "arbitrary and capricious" standard of review, because rarely will there be a sound statutory reason to withhold this recompense. Denial of such "make whole" relief should prove exceptional, not because tested by a different standard than applied to other types of remedial action, but because such denial is unlikely to pass *any* test—such as the *FCI* test—which properly takes into account competing statutory aims.

### D.

■ The respondent insists that *AFGE v. FLRA* is inapposite absent an explicit request for back pay. While it is true that the union has not asked for an award of back pay, it is equally clear that "make whole" relief for aggrieved employees *may* take this form. This court in *Professional Airways Systems Specialists, MEBA, AFL–CIO v. FLRA*, 809 F.2d 855 (D.C.Cir. 1987) (*"MEBA"*) recently invalidated the Authority's *per se* rule against the award of back pay to remedy an impact and implementation bargaining violation. The court there held that the Back Pay Act, 5 U.S.C. § 5596 (1982), does not require that employees bear the insurmountable burden of demonstrating a "but for" relationship between the improper refusal to bargain and

the loss of pay or benefits. Employees seeking this relief need only show the likelihood of a "causal nexus" between the two. *Id.* at 859 n. 11.

On remand in *MEBA*, the FLRA reasoned that such a "causal nexus" could best be demonstrated by comparing the impact of the unilaterally implemented practice to the likely effect of any agreement reached after completion of required bargaining over implementation. The Authority could then order "an award of backpay consistent with the results of the ordered bargaining"—that is, "make whole" compensation measured by retroactive application of the collective bargaining order. See *Federal Aviation Administration, Washington, D.C. and Professional Airways Systems Specialists, MEBA, AFL–CIO*, 27 F.L.R.A. 230, 235 (1987). Similarly, it should be possible in the present case to determine any compensation due individual employees by giving retroactive effect to the agreement resulting from ordered bargaining. Employees who believe they have suffered untoward effects of the new evaluation system will best be able to demonstrate a "causal nexus" after bargaining is completed.

Because of the Authority's failure to undertake the proper analysis, the Authority has not considered whether a SQA remedy limited to individual "make whole" relief entails significant agency disruption or whether there are special considerations making a partial grant of a SQA remedy less feasible than it appears to be. Similarly, it is unclear if mechanisms such as grievance procedures are in place to address individual employee claims of harm. However, "[t]he Authority regularly resolves disputes that require subsequent proceedings to work out the details of its orders." *National Treasury Employees Union v. FLRA*, 802 F.2d 843, 845 (6th Cir.1986). Accordingly, we remand to the Authority for consideration of this issue.

*Affirm in part, vacate and remand in part.*