966 F.2d 702
 140 L.R.R.M. (BNA) 2872, 296 U.S.App.D.C. 182
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
PROFESSIONAL AIRWAYS SYSTEMS SPECIALISTS DIVISION, DISTRICT
NO. 1--MEBA/NMU, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
 No. 91-1310.
 United States Court of Appeals, District of Columbia Circuit.
 June 22, 1992.
 
 Before HARRY T. EDWARDS, BUCKLEY and SENTELLE, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was heard on the record from the Federal Labor Relations Authority and was briefed and argued by counsel. Although the issues presented occasion no need for an opinion, we have accorded them full consideration. See D.C.Cir.R. 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED by the court that the petition for review be granted only with respect to the Authority's denial of status quo ante relief, and it is
 
 
 3
 FURTHER ORDERED AND ADJUDGED by the court that the case be remanded to the Federal Labor Relations Authority for further proceedings consistent with the accompanying memorandum.
 
 
 4
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15. This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 5
 Professional Airways Systems Specialists Division, AFL-CIO ("PASS"), the exclusive bargaining representative of certain employees of the Federal Aviation Administration ("FAA"), seeks review of a decision and order issued by the Federal Labor Relations Authority ("Authority") finding that the FAA committed an unfair labor practice by implementing a random drug testing program prior to completion of bargaining. PASS primarily challenges the Authority's refusal to require status quo ante relief, which would have rescinded the random drug testing program until bargaining was completed. PASS also raises two secondary issues: (1) the Authority's failure to grant "make-whole" relief; and (2) the Authority's dismissal of its complaint against the Department of Transportation ("DOT"). Because we conclude that the Authority did not adequately explain its decision to deny status quo ante relief, we remand for further consideration of the remedy.
 
 BACKGROUND
 
 6
 The FAA is a component of the DOT. PASS is the exclusive representative of two bargaining units within the FAA: (1) the "AF" unit composed primarily of electronic technicians; and (2) the "AVN" unit that includes pilots, co-pilots, and flight inspectors. Prior to 1987, the FAA had a substance abuse policy that provided for drug screening as part of annual physical examinations required for some employees, such as pilots. On January 21, 1987, the Secretary of Transportation issued a memorandum announcing a new program for a drug-free workplace. See Department of Transp. and FAA, 40 FLRA (No. 61), slip op. at 4 (May 3, 1991) ("Order"). Under this program, employees in "critical safety and security positions" would be subject to random drug testing in addition to ordinary annual drug testing. Id.
 
 
 7
 PASS and the FAA had several conversations in July 1987 in which PASS repeatedly expressed its desire to negotiate over the impact and implementation of the drug testing program. On August 7, 1987, the FAA sent PASS a copy of a notice advising certain FAA employees that random drug testing could begin in thirty days. On August 27, PASS and the FAA began bargaining over the drug testing program. On September 4, the FAA agreed that a number of PASS's proposals were negotiable; the next meeting was scheduled for September 16. The parties were not at impasse.
 
 
 8
 PASS on several occasions requested the FAA to postpone the September 8 implementation date. The FAA claimed it did not have authority to postpone because implementation was within the control of the DOT, not the FAA, but it agreed to seek a delay from the DOT. While the record shows that the DOT was informed of this problem, the Authority found no evidence that the FAA requested a postponement of the program within the PASS bargaining units or that it ordered the FAA to proceed with the drug testing program while negotiations were still pending. Order at 17. The random drug testing program began as scheduled on September 8, 1987.
 
 
 9
 The Authority concluded that the FAA had committed an unfair labor practice by refusing to delay implementation of the random drug testing program until bargaining had been completed. Order at 28. Specifically, the Authority found a violation of section 7116(a)(5) of the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101 et seq. (1988) ("the Statute"), which provides that "it shall be an unfair labor practice for an agency ... to refuse to consult or negotiate in good faith with a labor organization" on changes in conditions of employment. 5 U.S.C. § 7116(a)(5). With regard to the allegations against the DOT, the Authority stated that "the record does not support a conclusion that DOT interfered with the bargaining relationship between FAA and PASS." Order at 28. The Authority therefore dismissed PASS's complaint against the DOT. Id. at 32.
 
 
 10
 In fashioning a remedy, the Authority rejected status quo ante relief after applying the five-prong balancing test set forth in Federal Correctional Institution, 8 FLRA 604 (1982) ("FCI "). As relevant here, the fifth prong of the FCI test requires the Authority to consider "whether, and to what degree, a status quo ante remedy would disrupt or impair the efficiency and effectiveness of the agency's operations." Id. at 606. The Authority stated that
 
 
 11
 [i]n view of the paramount and incontrovertible need to ensure the integrity of the aviation safety and control system, we conclude that to require a return to the status quo ante in this case would be detrimental to the efficiency and effectiveness of FAA's operations.
 
 
 12
 Order at 31. The Authority therefore issued only a prospective order that would allow the random testing program to continue in full force while bargaining proceeded. Id. at 31-32.
 
 DISCUSSION
 A. Status Quo Ante Relief
 
 13
 An appellate court is particularly deferential when reviewing an administrative agency's choice of remedy. National Treas. Employees Union v. FLRA, 910 F.2d 964, 966-67 (D.C.Cir.1990) (en banc ). In cases such as this one, however,
 
 
 14
 where an agency has taken unilateral action that disturbs the status quo and has illegally refused to give a union an opportunity to bargain over the decision (or its impact), a stronger case can be made for the proposition that the Authority ... should restore the status quo ante in a remedial order.... That does not necessarily mean that the Authority must employ such a remedy as a matter of law, but in such a case it would surely bear the burden of explaining why it did not.
 
 
 15
 Id. at 969. We conclude that the Authority did not provide an adequate explanation for its decision to deny status quo ante relief.
 
 
 16
 In applying the fifth prong of the balancing test, see FCI, 8 FLRA at 606, the Authority reasoned that a
 
 
 17
 drug-related lapse by an employee in a position that is directly related to the operation of the aviation safety and control system can have irreversible and calamitous consequences.... We find that FAA has a particularly urgent need to ensure a drug-free workplace.
 
 
 18
 Order at 31 (emphasis added and internal quotation marks omitted). This finding of a "particularly urgent need" is not "supported by substantial evidence on the record." 5 U.S.C. § 7123(c). Moreover, it is utterly inconsistent with the Authority's conclusion that the FAA committed an unfair labor practice by initiating the program on September 8, 1987, prior to completion of bargaining. The Authority has pointed to no evidence of any change in circumstances since 1987 indicating that pre-implementation bargaining is no longer appropriate. Nor did the Authority justify its decision in other terms.
 
 
 19
 If the Authority should on remand maintain its view that urgent considerations of safety require the continuation of the testing program, it must provide a proper factual basis for its conclusion. The Authority has discretion to distinguish between different job categories--for instance, pilots versus technicians or inspectors--in deciding whether status quo ante relief is appropriate. Cf. National Fed'n of Fed. Employees v. Cheney, 884 F.2d 603, 610-11 (D.C.Cir.1989). The Authority also may consider the possibility, suggested by PASS at oral argument, that a time limit be imposed on the bargaining process.
 
 B. Secondary Matters
 
 20
 PASS now complains that the Authority should have issued a "make-whole" order requiring the FAA to redress employees who may have been harmed by the improperly implemented random drug testing program. PASS, however, did not present evidence to the Authority that any employees had been adversely affected by the testing. We therefore cannot fault the Authority for failing to provide make-whole relief.
 
 
 21
 PASS also contends that the DOT should be held responsible for implementing the random drug testing program without bargaining. PASS argues that the Statute places the duty to bargain, and therefore the liability for any unfair labor practices, on the "agency," which is defined as "an Executive agency," citing 5 U.S.C. §§ 7103(a)(3), 7114(a)(4) and (b), and 7116(a)(5). See Brief for Petitioner at 19. It then maintains that while the DOT is clearly an "Executive agency," the FAA (in the words of the FLRA) is merely an "operating administration within DOT." Id. (citing Order at 3). Consequently, in its view, the Authority erred when it found that the DOT had no duty to bargain with PASS. Id. at 19-20.
 
 
 22
 The Authority, however, interpreted the Statute as placing the duty to bargain at the level of exclusive recognition, which rests with the FAA, not the DOT. See Order at 16-17. Because we cannot conclude either that the Authority's interpretation conflicts with the unambiguously expressed intent of Congress or that it is unreasonable, we defer on this question of statutory interpretation. See Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 842-43 (1984).
 
 
 23
 Finally, the Authority determined that the "record does not support a conclusion that DOT interfered with the bargaining relationship between FAA and PASS." Order at 28. We reject PASS's contention that this determination was not supported by substantial evidence.
 
 CONCLUSION
 
 24
 For the foregoing reasons, PASS's petition for review is granted only with respect to the Authority's denial of status quo ante relief. On remand, the Authority is not required to order complete suspension of the random testing program pending re-bargaining; if, however, the Authority denies suspension in any respect, it must present an adequate explanation consistent with this memorandum.
 
 
 25
 So ordered.