**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**No. 85–1004.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 19, 1985.

Decided March 11, 1986.

William J. Stone, with whom Mark D. Roth, Washington, D.C., was on brief, for petitioner.

Pamela P. Johnson, Atty., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., Steven H. Svartz, Deputy Sol., and William E. Persina, Associate Sol., Federal Labor Relations Authority, Washington, D.C., were on brief, for respondent.

Before WRIGHT and EDWARDS, Circuit Judges, and DAVIS,* Circuit Judge, United States Court of Appeals for the Federal Circuit.

Opinion PER CURIAM.

PER CURIAM:

The American Federation of Government Employees, AFL–CIO (AFGE or Union), seeks review of the decision of the Federal Labor Relations Authority (FLRA or Authority) denying the Union's demand that the FLRA not withdraw an unfair labor practice complaint previously issued by the Authority. The question is whether the Authority's General Counsel properly exercised his discretion, under the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101–7135 (1982) (Statute), in determining that an informal settlement agreement (which did not call for full *status quo ante* relief or back pay) provided an adequate remedy effectuating the purposes of the Statute, and therefore appropriately withdrew the unfair labor practice complaint. We uphold the General Counsel's exercise of his discretion in this particular case, without accepting for the future the argument that the imposition of budget cuts (coupled with a claim that disruption will result from *status quo ante* relief) is generally a legitimate reason for the FLRA to exercise its discretion to deny back pay.

## I.

On December 29, 1983, the Equal Employment Opportunity Commission (EEOC or agency) implemented an immediate freeze on hiring after substantial reductions were imposed by Congress on EEOC's fiscal year 1984 budget. Immediately thereafter, the agency imposed a freeze on all promotions, effective January 8, 1984. Approximately 150 employees were affected.[1] The freeze on promotions affected employees within the bargaining unit represented by AFGE's affiliate, National Council of EEOC Locals, Council No. 216 (Council 216). Council 216 sought to negotiate the impact and implementation of the promotion freeze with the EEOC. The EEOC refused, however, to enter into such negotiations.

On January 20, 1984, Council 216 filed an unfair labor practice charge against the EEOC with the Regional Director of the Authority. That charge alleged that the EEOC violated a negotiated agreement that the parties had earlier entered into, and also violated 5 U.S.C. §§ 7116(a)(1), (5), and (8), by unilaterally and without prior notice changing the terms and conditions-of-employment of bargaining unit employees, and by imposing the freeze on promotions without affording the Union an opportunity to meet and bargain over the impact and implementation of the freeze.

The FLRA's Acting Regional Director (Regional Director) investigated the Union's allegations and issued a Complaint and Notice of Hearing on April 30, 1984. The complaint alleged, in relevant part, that the agency issued the promotion freeze without "affording the Union prior notice and an opportunity to negotiate over the impact and implementation of the change in working conditions" and that the employer has "failed and refused to negotiate with the Union over the impact and implementation of the promotion freeze."

A settlement agreement proposed by the Regional Director was signed by the agency's representatives on June 26, 1984. The settlement agreement, consisting primarily of a notice to employees, provided in pertinent part:

WE RECOGNIZE the NATIONAL COUNCIL OF EEOC LOCALS # 216, AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, as the exclusive representative of a unit of our employees appropriate for collective bargaining.

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

1. After the freeze was imposed, the agency conducted a reduction-in-force. Many employees were placed in competitive levels different from what they would have otherwise held, as a result of their failure to receive timely promotions due to the freeze.

WE WILL NOT unilaterally change the terms and conditions of employment for unit employees without notifying ... LOCAL # 216 ... and giving it the opportunity to negotiate over the impact and procedures for implementation of such changes.

WE WILL negotiate with the ... LOCAL # 216 ... upon request, over the impact and implementation of a freeze in unit employees' career ladder promotions effective January 8, 1984.

WE WILL NOT in any like or related manner interfere with, restrain or coerce our employees in the exercise of rights assured by the Federal Service Labor-Management Relations Statute.

After reviewing the settlement agreement, Council 216 objected to it, principally because it did not restore the parties to the *status quo ante* and therefore gave an inadequate remedy. The Union noted that the agreement failed to provide any relief to those employees who had been denied timely promotions, including some who had been placed on different competitive levels as a consequence of the promotion freeze.

On July 6, 1984, the Regional Director approved the settlement agreement over AFGE's objections.[2] With respect to the Union's request for *status quo ante* relief, the Regional Director determined that *status quo ante* relief, in the form of retroactive promotions and corresponding back pay for employees affected by the January 8, 1984 promotion freeze, was not appropri-

ate in the circumstances since the implementation of the freeze on employee promotions was necessitated by budget constraints.

Council 216 appealed the Regional Director's determination to the Authority's General Counsel. By letter dated November 28, 1984, the General Counsel denied Counsel 216's appeal and agreed with the Regional Director's determination that the settlement effectuates the purposes of the Statute. In this respect, the General Counsel noted that:

> the Acting Regional Director determined that a *status quo ante* remedy was not appropriate because the implementation of the freeze in employee promotions was necessitated by budgetary constraints which similarly constrained against retroactive promotions and corresponding backpay for employees affected by the promotion freeze (which would be encompassed in any return to the *status quo ante*). Thus, in effect, the Acting Regional Director determined that the inclusion of a *status quo ante* remedy, under the circumstances of this case, where the Agency had sustained budget cuts also necessitating a hiring freeze and a reduction-in-force, would result in an excessive degree of disruption in the efficiency and effectiveness of the Agency's operations.

On appeal to this court,[3] petitioner AFGE contends that this informal settlement

---

**2.** The Regional Director concluded that the settlement agreement:

fully effectuates the purposes of the Statute and remedies the alleged unfair labor practices set forth in the Complaint. In this regard, the Settlement Agreement provides ... all the remedial action which might be ordered by the Authority ... i.e. agreement by the Respondent to negotiate over impact and implementation of the subject January 8, 1984 freeze on career ladder promotions and the posting of a Notice to Employees for sixty (60) days.

**3.** There is no dispute that the court has jurisdiction of the Union's appeal under the Statute's provision authorizing an aggrieved person to appeal "any final order of the Authority" (with irrelevant exceptions) to this court. 5 U.S.C. § 7123(a). In *International Ladies' Garment*

*Workers Union v. NLRB*, 501 F.2d 823 (D.C.Cir. 1974), this court sustained an appeal from the Labor Board's General Counsel's decision to withdraw a complaint in comparable circumstances; the National Labor Relations Act, 29 U.S.C. § 160(f), contains a substantially identical appeal provision ("Any person aggrieved by a final order of the Board ...").

We recognize that this is not a case involving a determination of the General Counsel not to issue an unfair labor practice complaint and thus arguably not reviewable. The Authority *concedes* that:

[t]he sole substantive issue raised by AFGE in this case is whether the postcomplaint, prehearing informal settlement agreement entered into by FLRA's General Counsel should have provided, in addition to the posting and bargaining remedies contained therein, a fur-

agreement fails to fulfill the purposes of the Statute and must be vacated. Respondent FLRA argues, first, that the FLRA's General Counsel's determinations are entitled to special deference and, second, that he properly exercised his discretion under the Statute in determining that the settlement agreement provides an adequate remedy which effectuates the legislative purposes.

## II.

Under the Statute the FLRA has broad discretion (as does the National Labor Relations Board (NLRB or Labor Board) under the National Labor Relations Act (Labor Act) [4]) in framing appropriate remedies for unfair labor practices and determining whether to enter into settlement agreements.[5] The FLRA is entitled to "considerable deference when it exercises its 'special functions of applying the general provisions of the [Statute] to the complexities' of federal labor relations." *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (BATF). This deferential standard is reflected in 5 U.S.C. § 7118(a)(7)(D) which provides that the Authority may order offending agencies and labor organiza-

tions to undertake "such . . . actions as will carry out the purpose of [the statute.]" However, as the Supreme Court stated in *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 316, 99 S.Ct. 1123, 1132, 59 L.Ed.2d 333 (1979), "the rule of deference to the Board's choice of remedy does not constitute a blank check for arbitrary action. . . . [The court's role] is not that of a passive conduit." [6] *See also BATF*, 104 S.Ct. at 444 ("reviewing courts . . . must not rubber stamp . . . administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the Congressional policy underlying a Statute.") (citations omitted).

■ This court has previously recognized that Congress intended the FLRA's role in adjudicating unfair labor practice cases in the federal sector to be similar to that of the NLRB's in the private sector. *Turgeon v. FLRA*, 677 F.2d 937, 939–40 (D.C.Cir.1982); *see also BATF*, 104 S.Ct. at 442, 444. It is therefore appropriate that we consider the decisions of the NLRB in unilateral change cases. In such instances, the NLRB will normally order that the *status quo ante* be restored and that employees be made whole. *E.g., Atlas Tack*

ther remedy requiring the EEOC to return to the *status quo* in existence prior to the unilateral imposition of the promotion freeze. Consequently, the Authority believes that the precedent established in *International Ladies' Garment Workers Union* with respect to the narrow jurisdictional issue under the National Labor Relations Act is applicable in this case. The Authority therefore will not contest jurisdiction in the circumstances presented here. Brief for the Federal Labor Relations Authority at 10 n. 10.

4. The Supreme Court has described the remedial discretion of the NLRB in *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 216, 85 S.Ct. 398, 406, 13 L.Ed.2d 283 (1964), as follows:

The Board's power is a broad discretionary one, subject to limited judicial review. [*National Labor Relations Board v. Seven-Up Bottling Co.*, 344 U.S. 344, 346, 73 S.Ct. 287, 288, 97 L.Ed. 377 (1953).] "[T]he relation of remedy to policy is peculiarly a matter for administrative competence." *Phelps Dodge Corp. v. Labor Board*, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941). "In fashioning

remedies to undo the effects of violations of the Act, the Board must draw on enlightenment gained from experience." *Labor Board v. Seven-Up Bottling Co.*, 344 U.S. 344, 346, 73 S.Ct. 287, 288, 97 L.Ed. 377 (1953). The Board's order will not be disturbed "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Virginia Elec. & Power Co. v. Labor Board*, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943).

5. *See* 5 U.S.C. § 706(2)(A) of the Administrative Procedure Act which provides generally that federal agency action shall be set aside only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

6. *See Peoples Gas System, Inc. v. NLRB*, 629 F.2d 35, 42 (D.C.Cir.1980), where this court said "It is our responsibility to examine carefully both the Board's findings and its reasoning, to assure that the Board has considered the factors which are relevant to its choice of remedy . . ., and chosen a remedy which can fairly be said to effectuate the purposes of the Act."

*Corp.*, 226 NLRB No. 222 (1976). This course of action is in accord with Supreme Court precedent. In *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 192–94, 61 S.Ct. 845, 851–52, 85 L.Ed. 1271 (1941), the Court recognized that Congress intended that the Board and the courts, in fashioning remedies under the NLRA, be mindful of restoring the situation, as nearly as possible, to that which would have been obtained but for the illegal discrimination.

The NLRB typically exercises its discretion to deviate from the general rule of *status quo ante* relief in only a few narrow categories of cases. Where the employer has closed a substantial portion or all of its business as part of its unfair labor practice, the NLRB may not order an employer to resume operations in order to restore the *status quo ante* if such relief would cause undue hardship. *See, e.g., Great Chinese American Sewing Co. v. NLRB*, 578 F.2d 251 (9th Cir.1978). This exception appears to be grounded on the postulate that the decision to close a plant is a matter uniquely within the management's prerogative. Similarly, where the employer has performed a major reorganization of its business and the *status quo ante* relief would require a reversal of this reorganization, *status quo ante* relief need not be granted if it would cause undue hardship. *See, e.g., Hood Industries*, 273 NLRB No. 197 (1985). Furthermore, where the employer's refusal to bargain was the result of a good faith mistake or misunderstanding, *status quo ante* relief will not be ordered. *See, e.g., Beacon Journal Publishing Co. v. NLRB*, 401 F.2d 366 (6th Cir.1968) (where employer in good faith relied on voluntary character of bonus which was later deemed a "wage," NLRB should not have ordered reimbursement for bonuses not paid due to employer's unilateral change). Also, where the employer mistakenly assumed that it had to bargain over only the effects of a decision and not the decision itself, *status quo ante* will not be

forthcoming. Even when *status quo ante* relief is denied in cases of undue hardship, the NLRB still will typically grant monetary relief, such as backpay, in addition to any order to bargain. *Great Chinese American Sewing Co.*, 578 F.2d 251, *supra.*

The FLRA has not suggested that its discretion to determine appropriate remedies should be broader than that of the NLRB. In fact, the FLRA has denied *status quo ante* relief for similar reasons. *See, e.g., United States Government Printing Office and Joint Council of Unions, GOP*, 13 FLRA No. 203 (1983) (*status quo ante* relief is not warranted where employer failed to give Union timely notice and an opportunity to bargain over the effects of a reorganization).

### III.

In this case, Congress cut the agency's budget and the agency, in turn, instituted a promotion freeze and a reduction-in-force which apparently involved some reorganization. For the FLRA this appears to have been a case of first impression, and the parameters of the FLRA's discretion to deny *status quo ante* relief were not then clear. Because of this lack of clarity in the law at that time, coupled with the potential disruptive effects of *status quo ante* relief in this instance, we uphold the FLRA's exercise of its discretion here. In the absence of judicial guidance and the existence of some relevant NLRB precedent, that determination was not arbitrary or capricious.

In the future, however, the general argument that budget cuts (coupled with a claim that some disruption will result from *status quo ante* relief) is a legitimate reason for the FLRA to exercise its discretion to deny *status quo ante* relief will not be upheld.[7] If the Authority's overall argument were accepted, it could be stretched to preclude effective relief in any case

---

7. *See, e.g., NLRB v. J.H. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 263, 90 S.Ct. 417, 420, 24 L.Ed.2d 405 (1969), where the Court stated that "the purpose of the remedy is clear. 'A back pay order is a

reparation order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of an unfair labor practice.'"

where the employer is motivated by budgetary considerations. But economic hardship is a fact of life in employment, for the public sector as well as the private. Such monetary considerations often necessitate substantial changes. If an employer was released from its duty to bargain whenever it had suffered economic hardship, the employer's duty to bargain would practically be non-existent in a large proportion of cases. Congress has not established a collective bargaining system in which the duty to bargain exists only at the agency's convenience or desire, or only when the employer is affluent. On the contrary, in the "Findings and purpose" provision of the Statute, Congress explicitly found, affirmatively, that collective bargaining "safeguards the public interest" and "contributes to the effective conduct of public business," as well as concluding that "labor organizations and collective bargaining in the civil service are in the public interest." 5 U.S.C. § 7101(a). These constitute the "public policy of the statute" (*see NLRB v. J.H. Rutter-Rex Mfg. Co., supra*) which Congress expected the Authority to vindicate, just as the Labor Board vindicates the Labor Act's comparable policy in the private area. Respondent invokes the provision of 5 U.S.C. § 7101(b) which states that the Statute "should be interpreted in a manner consistent with the requirement of an effective and efficient Government." However, in the context of the specific congressional findings we have just quoted, *supra*, that desirable principle does not remotely suggest that the duty to bargain (under a collective bargaining agreement) about the impact and distribution of budgetary cuts or problems is to be mitigated, not enforced, or left unvindicated in the public sector. Federal agencies with collective bargaining agreements should not think that henceforth they can disregard, because of changes due to budgetary problems, their collective bargaining obligations, at the risk of no more than a slap

on the wrist.[8] Congress did not intend rights of federal unions and employees to be so much different from those of private employees and unions under the National Labor Relations Act.

*Affirmed.*

---

**8.** As a practical matter, the mere remedy of posting a notice would seem to give the employer little incentive to comply with its bargaining obligation under the Statute. In the current

instance, for example, the settlement agreement notice did no more than call upon the EEOC to honor its original obligation under the bargaining agreement.