NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  05a0591n.06
Filed:  July 12, 2005

**No. 04-1279**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**STERLING FLUID SYSTEMS (USA), INC.**

> **Appellant,**

**v.**

**CHAUFFEURS, TEAMSTERS & HELPERS**      **ON APPEAL FROM THE UNITED**
**LOCAL UNION #7, AFFILIATED WITH**      **STATES DISTRICT COURT FOR THE**
**THE INTERNATIONAL BROTHERHOOD**      **WESTERN DISTRICT OF MICHIGAN**
**OF TEAMSTERS**

> **Appellee.**

                                             /

Before: DAUGHTREY and CLAY, Circuit Judges, and GRAHAM,[*] District Judge

GRAHAM, District Judge.

Defendant Chauffeurs, Teamsters & Helpers Local Union #7 (the "Union") brings this appeal of the district court's February 3, 2004 order vacating an arbitrator's award in the Union's favor. The dispute concerns the actions of Plaintiff Sterling Fluid Systems (USA) Inc. ("Sterling") in closing one of its foundries. After deciding to close the foundry, Sterling removed certain molds

---

[*] The Hon. James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

1

and dies used in the manufacturing process and shipped them to a Sterling facility in Canada and a non-Sterling facility in California. The Union filed a grievance challenging the removal of the molds and dies as subcontracting in violation of the parties' collective bargaining agreement. The grievance went to arbitration, where the arbitrator found that Sterling had violated the subcontracting clause of the CBA. Sterling then filed an action in the district court and moved to vacate the arbitration award. The district court granted the motion to vacate, finding that Sterling had express contractual authority to close the foundry and that the arbitrator's decision contradicted the plain language of the CBA's management rights clause.

Because the Court finds that the arbitration award failed to draw its essence from the CBA, we **AFFIRM** the district court's decision to vacate the arbitration award.

## I. BACKGROUND

According to the arbitrator's findings of facts, which this Court must accept as true, see United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), Sterling manufactures various types of pump products. It operates three facilities: La Boer in Alabama, Peerless in Indiana, and SIHI in Ontario, Canada. Sterling once owned and operated a small foundry called Process Metals Company, located in White Pigeon, Michigan. The Union represented 13 employees at the White Pigeon foundry. Sterling and the Union had a collective bargaining agreement in place which ran from August 27, 2000 through June 15, 2003.

When demand for its products lagged in 2000 and 2001, Sterling looked for ways to improve economies in its operations. The White Pigeon foundry was analyzed and determined to be too small to stand alone. Sterling's Executive Vice President recommended closing the foundry.

In January 2002, Sterling informed the Union and plant employees of its intent to close the foundry. On January 18, 2002, the plant manager told all plant employees of the closing. In a certified letter received by the Union on January 23, 2002, Sterling notified the Union of its decision to begin a gradual downsizing of the foundry in March 2002 and to close the facility on April 30, 2002.

On February 7, 2002, crews arrived at the foundry and removed the molds and dies necessary to carry out the manufacturing process at the foundry. The molds and dies were loaded onto trucks for shipment to Sterling's facility in Ontario, Canada and to a non-Sterling facility in California. According to the arbitrator, the nature of Sterling's relationship with the facility in California is "unclear." (J.A. at 148)

Upon discovering that the molds and dies were being removed from the foundry, the Union filed a grievance under the CBA. The grievance, dated February 7, 2002, stated in full: "The Company is in violation of Article II--Subcontracting by subcontracting our work out." (J.A. at 48). The subcontracting clause of the CBA provides:

> It is expressly understood that the Company may sub-contract work which occurs because of emergencies, lack of required manufacturing equipment or techniques, unusual and urgent customer delivery requirements, lack of maintenance job skills, or for additional capacity. In doing so, the Employer agrees that it will not use any sub-contracting device primarily for the purpose of evading this Agreement.

CBA, Art. II (J.A. at 16).

3

Sterling opposed the Union's grievance. Sterling relied on the management rights clause of the CBA in arguing to the arbitrator that Sterling had a right to close the foundry. The management rights clause provides:

> Subject to the provisions of this Agreement, the parties recognize that the management of the plant and the direction of the working forces remain vested in the Company. The management of the plant includes all the customary and usual rights, powers, functions, and the authority of management; such as, but not limited to, the right to plan, direct, and control plant operation; to hire, promote, transfer or demote; to suspend or discharge for cause; to maintain discipline and efficiency of employees; to issue and enforce reasonable rules and regulations; to introduce new and improved methods and facilities, or to change existing methods or facilities; to determine the products to be made or services to be performed, and those purchased from or made by other sources, or to be performed by outside contractors; and to perform all other actions which management believes necessary to maintain the Company in a sound competitive condition for the benefit of its employees and for the stockholders who have invested in the Company. Any controversy with respect to the above shall be subject to the grievance procedure.

CBA, Art. II (J.A. at 16).

The arbitrator held a hearing on the Union's grievance on August 15, 2002 and issued a decision in the Union's favor on November 27, 2002. The arbitrator stated from the outset of his decision that this was a "subcontracting case," not a "plant closure case." (J.A. at 147). Because the arbitrator viewed the removal of the molds and dies as subcontracting, he concluded that Sterling had a duty to consult with the Union about its plan to subcontract the foundry work. The arbitrator further found that Sterling's alleged subcontracting of the work did not fit within the six exceptions listed in the subcontracting clause. Thus, the arbitrator determined that Sterling violated the CBA's subcontracting clause when, without notice to the Union, it "made arrangements to contract out the bargaining unit work to its subsidiary in Ontario, Canada, and to another company in California."

4

(J.A. at 148). As a remedy, the arbitrator ordered Sterling to reopen the foundry, rehire the Union employees, and give them back-pay.

The arbitrator further found that the Union had filed its grievance in a timely manner. The CBA required grievances to be filed within five working days of the event giving rise to it. See CBA, Art.V, §4 (J.A. at 21). According to Sterling, the grievance should have been filed within five days of January 23, 2002, when the Union received a letter notifying it of the foundry's closing. The arbitrator rejected Sterling's argument. Because the Union's grievance complained of subcontracting and was filed on the same day that the Union became aware of the removal of the molds and dies, the arbitrator found the grievance to be timely. (J.A. at 149-50).

On February 27, 2003, Sterling filed a complaint in district court under the Labor Management Relations Act and moved to vacate the arbitration award. The district court granted the motion to vacate, holding that the arbitration award failed to "draw its essence" from the CBA. (J.A. at 172). The court found that the arbitrator gave "short shrift" to the importance of Sterling's decision to close the foundry and "mistakenly" analyzed the dispute under the CBA's subcontracting clause. "[A] company's decision to shut down a plant comprises a classic management decision, expressly protected in this case by the CBA's Management Rights Clause." (J.A. at 168). In the district court's view, when Sterling moved the molds and dies to Canada and California, "it was simply taking reasonable and necessary steps to close the facility – not subcontracting." (J.A. at 172). The court concluded that the arbitrator's decision conflicted with the express terms of the management rights clause and, thus, failed to draw its essence from the CBA.

5

## II. DISCUSSION

The Union appeals the district court's order vacating the arbitration award. In the context of a district court's decision to confirm or vacate an arbitration award, we review the district court's legal conclusions *de novo* and its factual findings for clear error. First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 947-48, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. §185(c), gives federal courts jurisdiction to enforce collective bargaining agreements such as the one between Sterling and the Union. Nonetheless, the Act expresses a "decided preference for private settlement of labor disputes" when an agreement provides for grievance and arbitration procedures. United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (citing 29 U.S.C. §173(d)). Courts, therefore, play a "limited role" when reviewing the decision of an arbitrator. Id. Substantial deference must be given to an arbitrator's settlement of a labor dispute. DBM Tech., Inc. v. Local 227, United Food & Commercial Worker Int'l Union, 257 F.3d 651, 656 (6th Cir. 2001). "Arbitration as a means of dispute resolution is highly favored and courts have long refrained from involving themselves in the merits of an arbitration award." International Broth. of Elec. Workers, Local 429 v. Toshiba America, Inc., 879 F.2d 208, 209 (6th Cir. 1989). The arbitrator's decision warrants deference because "it is the arbitrator's construction of the collective bargaining agreement, not the court's construction, to which the parties have agreed." Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24, 357 F.3d 546, 551 (6th Cir. 2004). "Indeed, an arbitrator's factual errors and even misinterpretations

6

of a collective bargaining agreement are not subject to reconsideration by the court." Id.

An arbitration award may be vacated when it fails to "draw[] its essence from the collective bargaining agreement" and reflects the arbitrator's "own brand of industrial justice." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358 4 L.Ed.2d 1424 (1960). An arbitrator "may not ignore the plain language of the contract . . . . But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Misco, 484 U.S. at 38, 108 S.Ct. 364. An arbitration award fails to draw its essence from the agreement when it:

> (1) conflicts with express terms of the agreement; (2) imposes additional requirements not expressly provided for in the agreement; (3) is not rationally supported by or derived from the agreement; or (4) is based on general considerations of fairness and equity instead of the exact terms of the agreement.

Sterling China, 357 F.3d at 556; International Broth. of Teamsters, Local 519 v. United Parcel Service, Inc., 335 F.3d 497, 506-07 (6th Cir. 2003).

The Union argues that the district court did not afford the proper amount of deference to the arbitrator's decision. The Union contends that the district court wrongly categorized this as a plant closing case. The Union does not challenge Sterling's ability to close the foundry, but argues that the district court should have accepted the arbitrator's finding that removal of the molds and dies constituted subcontracting. In the Union's view, the district court erred when it set aside the arbitrator's interpretation of the CBA and analyzed the dispute under the management rights clause.

Sterling argues that the district court was correct to vacate the arbitration award. According

to Sterling, the arbitrator ignored the clear language of the management rights clause, which gave Sterling authority to close the foundry. Sterling contends that the arbitrator rushed to judgment by accepting the Union's mischaracterization of the dispute as a subcontracting case, without fully considering the context in which the decision to remove the molds and dies was made.

We agree with the district court that the arbitrator's decision conflicts with express terms of the CBA's management rights clause. That clause granted Sterling "all the customary and usual rights, powers, functions, and the authority of management." This included the right "to plan, direct, and control plant operation; . . . to change existing methods or facilities; . . . to determine the products to be made or services to be performed, and those purchased from or made by other sources, or to be performed by outside contractors; and to perform all other actions which management believes necessary to maintain the Company in a sound competitive condition." (J.A. at 16).

As the district court pointed out, the power to close a manufacturing facility is a customary power of management. See, e.g., Air Line Pilots Ass'n, Int'l v. Guilford Transp. Industries, Inc., 399 F.3d 89, 101 (1st Cir. 2005) (noting that "closing is management's prerogative"); Arrow Automotive Indus., Inc. v. NLRB, 853 F.2d 223 (4th Cir. 1988) (holding with respect to a partial closing that "decisions of the magnitude involved here remain management prerogatives"); American Federation of Government Employees, AFL-CIO v. Federal Labor Relations Authority, 785 F.2d 333, 337 (D.C. Cir. 1986) ("[T]he decision to close a plant is a matter uniquely within the management's prerogative."). The United States Supreme Court held in First National Maintenance Corp. v.

NLRB, 452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981), that an employer has no duty to bargain over the decision to terminate operations at one of its sites. "This decision, involving a change in the scope and direction of the enterprise, is akin to the decision whether to be in business at all . . . ." 452 U.S. at 677, 101 S.Ct. 2573. The Supreme Court stressed that a business needs "some degree of certainty beforehand as to when it may proceed to reach decisions without fear of later evaluations labeling its conduct an unfair labor practice." Id. at 679, 101 S.Ct. 2573; see also Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 223, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964) (Stewart, J., concurring) (stating that there is no duty to bargain collectively over managerial decisions that "lie at the core of entrepreneurial control," including decisions concerning "the basic scope of the enterprise").

Moreover – barring language in the CBA otherwise – a company that decides to close a facility also has the authority to allocate the remaining capital as it sees fit. In International Union United Auto. Workers v. Lester Engineering Co., 718 F.2d 818 (6th Cir. 1983), Lester Engineering announced that it was closing its manufacturing facility and selling off the equipment which remained in the facility. The union filed a grievance alleging that the plant closing was subcontracting in violation of the collective bargaining agreement. Despite the union's characterization of the case, this court found that the "underlying dispute" was Lester's decision to close the manufacturing facility. 718 F.2d at 824. Because the CBA's management prerogative clause delegated the "decision to close" to Lester, the court held that Lester had a right to unilaterally close the facility and sell the equipment. Id. In so holding, the court noted that a

management prerogative clause should be carefully examined "to minimize the potential for encroachment upon areas of exclusive management responsibility." Id.

Similarly, in Arrow Automotive Indus., Inc. v. NLRB, 853 F.2d 223 (4th Cir. 1988), a company that re-manufactured automobile and truck parts decided to close one of its plants, relocate the work to one of its three other plants, and sell the remaining property and equipment. After a review of First National Maintenance and other case law, the Fourth Circuit found that "economically motivated partial closing decisions are not mandatory subjects of bargaining." 853 F.2d at 227. "[A]n employer has no duty to bargain over a decision to close part of its business." 853 F.2d at 227. Further, the court held that the company had authority to relocate the work and sell its capital: "The magnitude of the decision to shut down an entire facility and to reallocate large amounts of capital underscores the need for certainty in the conduct of business affairs . . . . Where a manufacturing facility is to be shut down, management may need to act swiftly in winding down the operation and reallocating or selling property and equipment." Id., at 231-32.

The Fourth Circuit again highlighted the importance of management's ability to allocate capital following a decision to close in Dorsey Trailers, Inc. v. NLRB, 233 F.3d 831 (4th Cir. 2000). The court held that a company which manufactured dump trailers had no duty to bargain over its decision to close down one plant and relocate its operations and equipment to a newly-purchased facility. The Fourth Circuit found that the "ability to decide where to commit 'investment capital'" was "'fundamental to the basic direction of a corporate enterprise'" and was therefore firmly committed to the discretion of management. 233 F.3d at 842 (quoting Fibreboard, 379 U.S. at 223,

85 S.Ct. 398).

The arbitrator saw the matter at hand as a simple case of subcontracting. After briefly noting Sterling's argument that this was a plant closure case, the arbitrator stated, "I disagree," and never returned to the subject. (J.A. at 147). The arbitrator ignored Sterling's contention that the management rights clause authorized Sterling to close the foundry and relocate the molds and dies. In taking such a narrow approach, the arbitrator failed to consider the importance of Sterling's ability under the CBA to close the foundry and allocate the physical capital that remained in the foundry.

Certainly, arbitrators have wide latitude in interpreting collective bargaining agreements. But in analyzing the Union's grievance, the arbitrator should have at least considered what the CBA had to say about Sterling's right to close the foundry. The arbitrator should not have viewed Sterling's decision to remove the molds and dies in a vacuum. That decision was part of Sterling's efforts to close the foundry. As the district court stated, "[W]hen Sterling moved the [foundry] tools and dies to Canada and California, it was simply taking reasonable steps to close the facility – not subcontracting." (J.A. at 172). The arbitrator characterized the matter as a subcontracting case from the start, without pausing to acknowledge that Sterling's removal of the molds and dies followed from its decision to close foundry.

We find that the arbitrator's decision failed to draw its essence from the CBA because it disregarded the plain language of the CBA's management rights clause. Thus, the arbitration award cannot be enforced. See Enterprise Wheel, 363 U.S. at 597, 80 S.Ct. 1358 (stating that when "the

11

arbitrator's words manifest an infidelity" to his obligation to follow the plain language of the agreement, "courts have no choice but to refuse enforcement of the award").

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's order vacating the arbitration award.

**CLAY, J., dissenting.** The majority claims that the arbitrator's decision fails to draw its essence from the parties' collective bargaining agreement ("CBA"); in my view, however, the district court impermissibly substituted its judgment for that of the arbitrator, and, apparently forgetting that review of an arbitration award is "one of the narrowest standards of judicial review in all of American jurisprudence," *Lattimer-Stevens Co. v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir. 1990), the majority repeats the district court's mistake. I therefore respectfully dissent.

"Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-8 (1987). It is firmly established that "so far as the arbitrator's decision concerns construction of the contract, *the courts have no business overruling him because their interpretation of the contract is different from his*." *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596 (1960) (emphasis added); *see also Misco*, 484 U.S. at 38 (stating that so long as the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision"). In the instant case, the arbitrator's determination that Sterling's actions fell under the subcontracting clause was clearly an interpretation of the CBA, committed to his discretion and bargained for by the parties, and the majority has "no business overruling" this determination simply because they believe that the management rights clause of the CBA applies. *Enterprise Wheel*, 363 U.S. at 596.

13

No. 04-1279
*Sterling Fluid Systems, Inc. v. Chauffeurs, Teamsters & Helpers Local Union #7*

Like the district court, the majority confuses the arbitrator's interpretation of the CBA with the relief ordered. The arbitrator determined that under the CBA, Sterling's actions amounted to impermissible subcontracting. Then, as relief for this violation of the contract, the arbitrator ordered that the plant be reopened. The majority ignores the fact that the arbitrator applied the contract and acted within his authority in rendering his decision, and instead gets caught up in the plant reopening remedy. I concede that it is impossible to carry out the ordered remedy and reopen the plant at this time, as it has been closed for over three years.[1] However, simply because the relief ordered by the arbitrator is impracticable, it does not follow that arbitrator's award must be vacated in its entirety. In a similar situation, the Third Circuit held that an arbitrator's decision drew its essence from the

---

[1]Although I concede that the ordered plant reopening cannot be upheld in the instant case, I note that plant reopening is not a *per se* exceptional or inappropriate remedy. *See UFI Razor Blades, Inc. v. Dist. 65, Wholesale, Retail, Office and Processing Union*, 610 F.2d 1018, 1023 (2d Cir. 1979) ("An arbitrator, like the NLRB, may order resumption of operations and reinstatement with back pay as remedies for subcontracting violations."); *United Elec. Radio and Mach. Workers v. Honeywell, Inc.*, 522 F.2d 1221, 1226 (7th Cir. 1975) (noting that because "arbitrators are to be allowed flexibility in formulating remedies," "courts repeatedly have upheld awards requiring companies to return operations and equipment which have been moved to other locations in violation of subcontracting clauses"); *Selb Mfg. Co. v. Int'l Ass'n of Machinists, Dist. No. 9*, 305 F.2d 177, 179 (8th Cir. 1962) (upholding arbitration panel's order that company return machinery, work and equipment to closed plant, and rehire with full compensation and seniority workers who had been laid off ); *see also Vico Prods. Co., Inc. v. NLRB*, 333 F.3d 198, 212 (D.C. Cir. 2003) (holding that NLRB has authority to order reestablishment of business operations for subcontracting in violation of Section 8(d) of the National Labor Relations Act); *NLRB v. G & T Terminal Packaging Co., Inc.*, 246 F.3d 103, 121 (2d Cir. 2001) (same); *Coronet Foods, Inc. v. NLRB*, 158 F.3d 782, 785 (4th Cir. 1998) (same); *Mid-South Bottling Co. v. NLRB*, 876 F.2d 458, 461 (5th Cir. 1989) (same); *Woodline Motor Freight, Inc. v. NLRB*, 843 F.2d 285, 291 (8th Cir. 1988) (same); *NLRB v. Townhouse T.V. & Appliances, Inc.*, 531 F.2d 826, 830-31 (7th Cir. 1976) (same).

14

CBA, but that changed circumstances had likely rendered the awarded remedy of plant reopening futile. *See Teamsters Union Local No. 115 v. DeSoto, Inc.*, 725 F.2d 931, 939 (3d Cir. 1984). Recognizing that it was prohibited from substituting its own interpretation of the CBA for the arbitrator's interpretation, the court correctly concluded that the arbitrator's overall decision must be upheld, but that "[t]o enforce the arbitrator's original [plant reopening] remedy now would be not only fruitless, but also punitive." *Id.* at 942. Instead of entirely replacing the arbitrator's decision with its own reading of the CBA, the majority should have only vacated the arbitrator's remedy and remanded the award to the arbitrator to refashion appropriate relief for Sterling's violation of the CBA. *See*, *id.* at 938-39.

Because the arbitrator "arguably constru[ed] or appl[ied] the contract and act[ed] within the scope of his authority," I respectfully dissent from the majority's erroneous substitution of its own interpretation of the parties' CBA for the arbitrator's decision. *Misco*, 484 U.S. at 38.