# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued October 14, 2014          Decided April 7, 2015

No. 13-1261

JARED R. CLARK,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

---

On Petition for Review of a Final Order
of the Federal Labor Relations Authority

---

*D. Zachary Hudson*, appointed by the court, argued the cause as *amicus curiae* for petitioner. With him on the briefs was *H. Christopher Bartolomucci*.

*Fred B. Jacob*, Solicitor, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief was *Zachary R. Henige*, Deputy Solicitor.

Before: ROGERS, GRIFFITH, and WILKINS, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: This case challenges a decision by the General Counsel of the Federal Labor Relations Authority to settle an unfair labor charge

unilaterally after the issuance of a complaint, but before a hearing. Because our precedent holds that such a decision is not a "final order of the Authority" subject to review in this court under 5 U.S.C. § 7123(a), we dismiss the petition for lack of subject-matter jurisdiction.

I

The American Federation of Government Employees, Local 1945 (the Union) is the exclusive representative for all employees in the collective-bargaining unit at the Anniston Army Depot in Alabama.[1] Petitioner Jared Clark is a bargaining-unit employee, but not a dues-paying union member. In November 2008, the Union learned that the Depot was assigning some employees to duties beyond their pay grade without providing additional compensation. The Union filed a grievance on behalf of all bargaining-unit employees seeking that compensation.

In April 2010, the Depot and the Union entered a settlement agreement that provided backpay to the employees who performed the higher-graded duties. According to the settlement, the Union and the Depot would together determine the appropriate settlement amount for the employees from a list of those who might have valid claims supplied by the Union. It fell to the Union to notify Depot employees of the settlement and to gather from them the information needed to process claims. Though Clark had completed work above his pay grade, the Union failed to contact him. When Clark

---

[1] These facts are drawn from the final investigative report prepared by the General Counsel of the FLRA, the allegations in Clark's charge and the General Counsel's complaint, and various settlement documents.

visited the Union office to inquire about the settlement, a representative asked whether he was a Union member. Learning that he was not, the representative told Clark he needed to join that very day. Clark refused to join. Despite this exchange, the Union representative told Clark what he needed to do to submit a claim for inclusion in the settlement. Clark complied, providing the Union log books reporting the times he worked and affidavits from co-workers stating that they had seen Clark performing work above his pay grade.

The Depot and the Union eventually agreed to distribute $303,825 among 218 employees the Union had included on the list. The Union left Clark off the list and put only one person on the list who was not a member of the Union. Depending on the nature of their claims, employees on the list would receive between $300 and $1,970. Upon realizing that the proceeds of the settlement went almost entirely to Union members, Clark filed an unfair labor practice charge with the Federal Labor Relations Authority (the Authority). Following an investigation that identified Clark and fifty-five other nonunion employees whom the Union cut out of the settlement, the Authority's Regional Director issued a complaint on behalf of the General Counsel[2] alleging that the Union had violated 5 U.S.C. §§ 7114(a)(1) and 7116(b)(8) by giving preferential treatment to union members in settling the claims.

Before a hearing on the complaint took place, the Union and the Regional Director agreed to settle. The Union

---

[2] Under the Authority's regulations, the Regional Director may act on behalf of the General Counsel to "[a]pprove a request to withdraw a charge"; "[d]ismiss a charge"; "[a]pprove a written settlement agreement"; "[i]ssue a complaint"; or "[w]ithdraw a complaint." 5 C.F.R. § 2423.10(a).

would pay $1,970 to Clark, but only $200 to each of the fifty-five other nonunion employees. The Union would also inform the affected employees of the terms of the settlement by issuing notices describing the charges and their resolution along with the checks. Clark objected to the settlement. In his view, the agreement not only failed to adequately compensate him and the other nonunion employees, but it would not deter the Union from engaging in such unlawful discrimination in the future. The Regional Director considered Clark's objections but approved the settlement anyway. Clark appealed the Regional Director's determination to the Authority's General Counsel, who affirmed the decision. Clark filed this petition for review, arguing that the General Counsel lacked authority to settle the complaint unilaterally.

II

We may not take up the merits of Clark's petition before we consider the Authority's argument that we lack jurisdiction to review the General Counsel's unilateral settlement of an unfair labor practice charge.

The Federal Service Labor-Management Relations Statute (FSLMRS) provides that an aggrieved person may obtain judicial review only of "any final order of the Authority," subject to exceptions not relevant here. 5 U.S.C. § 7123(a). In *Turgeon v. FLRA*, we held that we had no jurisdiction to review the General Counsel's decision declining to issue a complaint. 677 F.2d 937 (D.C. Cir. 1982). We reached this result by looking to the reasoning of the Supreme Court interpreting the National Labor Relations Act, which, like the FSLMRS, limits our jurisdiction to challenges to a "final order of the Board." *Compare* 29 U.S.C. § 160(f), *with* 5 U.S.C. § 7123(a). Construing the similar language of

the NLRA, the Supreme Court held that a decision of the NLRB's General Counsel declining to issue an unfair labor practice complaint is not a "final order of the Board," and thus the courts had no jurisdiction to consider its lawfulness. *See Turgeon*, 677 F.2d at 940 (citing *Lincourt v. NLRB*, 170 F.2d 306, 307 (1st Cir. 1948), and *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138-39 (1975)).

In *Turgeon*, we thought it proper to consider the NLRA because the legislative history of the FSLMRS "makes clear [that] the structure, role, and functions of the Authority and its General Counsel were closely patterned after the structure, role, and functions of the NLRB and its General Counsel under the National Labor Relations Act." *Turgeon*, 677 F.2d at 939. We found evidence of an intent to model the position of the General Counsel of the Authority after that of the General Counsel of the NLRB in statements in both the House and Senate Reports. The House Report noted that the "Committee intend[ed] that the General Counsel [of the Authority] be analogous in role and function to the General Counsel of the National Labor Relations Board." H.R. REP. NO. 95-1403, at 41-42 (1978). The Senate Report provided that "[i]t is intended that unfair labor practice complaints will be handled by the General Counsel of the Authority in a manner essentially identical to National Labor Relations Board practices in the private sector." S. REP. NO. 95-969, at 106 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2723, 2824. We also relied upon our overview of the Authority's power in *Department of Defense v. FLRA*, where we explained that the Authority's "role is analogous to that of the National Labor Relations Board." 659 F.2d 1140, 1144 (D.C. Cir. 1981). Based on these statements in the legislative history and the NLRA precedent interpreting the analogous provision, we held that "the General Counsel of the Authority must be

accorded the same discretion with respect to issuance of unfair labor practice complaints as the General Counsel of the NLRB," and dismissed the petition for lack of jurisdiction. *Turgeon*, 677 F.2d at 940.

Fortunately, the Supreme Court has decided the very issue before us in the NLRA context. In *NLRB v. United Food & Commercial Workers Union, Local 23, AFL-CIO* (*UFCW*), the Supreme Court unanimously held that a decision by the NLRB's General Counsel to settle a complaint unilaterally before a hearing is not subject to judicial review under the NLRA. 484 U.S. 112 (1987). The Court noted that the NLRA distinguished between the adjudicatory role of the NLRB, which is reviewable, and the prosecutorial function of the General Counsel, which is not. The decision whether to file a complaint is clearly prosecutorial, whereas once a hearing begins on an unfair labor practice complaint, the process becomes adjudicative. *Id.* at 125. "Between these extremes" however, the Court found that pre-hearing settlements "might fairly be said to fall on either side of the division." *Id.* In light of this ambiguity, the Court deferred to the agency's regulation that placed the power to strike a unilateral settlement of a complaint prior to a hearing in the prosecutorial discretion of the Regional Director with review by the General Counsel, but not the NLRB. *See id.* at 125-26; 29 C.F.R. § 101.9. The Court remarked that it "fail[ed] to see why the General Counsel should have the concededly unreviewable discretion to file a complaint, but not the same discretion to withdraw the complaint before hearing if further investigation discloses that the case is too weak to prosecute." *UFCW*, 484 U.S. at 126. The Court thus determined that "[t]he General Counsel's unreviewable discretion to file and withdraw a complaint . . . logically supports a reading that he or she must also have final authority to dismiss a complaint in

favor of an informal settlement, at least before a hearing begins." *Id.*

Together, *Turgeon* and *UFCW* make clear that we lack jurisdiction to review the General Counsel's settlement in this case. *Turgeon* tells us to look to NLRA precedent when considering the powers of the Authority's General Counsel. *UFCW* tells us that the decision of the NLRB's General Counsel to affirm an informal settlement prior to a hearing is unreviewable. Indeed, this court has cited *UFCW* approvingly while reviewing an Authority decision. *See Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 753 (D.C. Cir. 1997) (per curiam). And just as in *UFCW*, the Authority has promulgated a regulation giving the Regional Director authority to settle complaints before a hearing without the charging party's approval. 5 C.F.R. § 2423.25(a)(1). Like the NLRB regime, the Authority's regulations give the Regional Director two ways to withdraw a complaint before a hearing begins: informal settlements and formal settlements. If the Regional Director chooses to undertake an informal settlement, he can withdraw the complaint unilaterally if he concludes that doing so will further the policies of the FSLMRS. *Id.* § 2423.25(b). The charging party can appeal the Regional Director's action to the General Counsel, but the agreement is "not subject to approval by or an order of the Authority." *Id.* § 2423.25(a)(1). Because the Authority is not involved, the agreements are not subject to court enforcement. On the other hand, if the Regional Director thinks that court enforcement might be necessary, he can enter into a formal settlement agreement that is subject to Authority approval and contains "consent to the Authority's application for the entry of a decree by an

appropriate federal court enforcing the Authority's order." *Id.* § 2423.25(a)(2).[3]

Here, the Regional Director used his power to informally settle the complaint. Therefore, just as in *UFCW*, the settlement was not subject to Authority review. *See* 5 C.F.R. § 2423.25(a)(1), (b). Furthermore, the logic of the argument the Court relied on in *UFCW* applies with equal force here: Just like the General Counsel of the NLRB, the General Counsel of the Authority has the unreviewable discretion to file and withdraw a complaint. *See Turgeon*, 677 F.2d at 940; 5 C.F.R. § 2423.10(a). With that unreviewable discretion, the General Counsel has "final authority to dismiss a complaint in favor of an informal settlement" prior to a hearing. *UFCW*, 484 U.S. at 126.

Seeking to avoid the force of the Court's analysis in *UFCW*, Clark argues that we should not defer to the Authority's position on the reviewability of the General Counsel's power. Clark claims that deferring in this circumstance would violate the principle that "[i]nterpreting statutes granting jurisdiction to Article III courts is exclusively the province of the courts." *Ramey v. Bowsher*, 9 F.3d 133, 136 n.7 (D.C. Cir. 1993). But neither the Authority here nor the NLRB in *UFCW* attempted to interpret the provisions of the statutes that allowed judicial review only of "final orders" of the Authority or the NLRB. Instead, the agencies merely determined the extent of their own power to review decisions of their General Counsels. While this determination has an effect on what is subject to judicial review, the Court in *UFCW* deferred to the NLRB's

---

[3] Our decision today has no bearing on whether such formal settlements are subject to judicial review.

interpretation in these precise circumstances under the NLRA. *See UFCW*, 484 U.S. at 123-26. Both *UFCW* and the case now before us involve an agency interpretation that does not provide for NLRB or Authority review of the General Counsel's settlement decisions, which therefore precludes our review. We see no way to distinguish this case.

Clark argues in the alternative that the text of the FSLMRS gives the General Counsel three distinct powers: (1) "investigat[ing] alleged unfair labor practices"; (2) "fil[ing] and prosecut[ing] complaints" following such an investigation; and (3) "exercis[ing] such other powers of the Authority as the Authority may prescribe." 5 U.S.C. § 7104(f)(2)(A)-(C). Clark claims that one of those "other powers" the Authority has delegated to the General Counsel is the ability to settle disputes. Because this power springs from the Authority, it still qualifies as a "final order of the Authority" subject to our review. In support of his argument, Clark states that the Authority—and not the General Counsel—issued the regulations giving the Regional Director the power to settle complaints with review from the General Counsel. This is factually incorrect. The Authority and the General Counsel jointly promulgated the controlling regulations initially, s*ee* 45 Fed. Reg. 3482, 3483-84 (Jan. 17, 1980), and have continued to revise them together, *see, e.g.*, 77 Fed. Reg. 33,751, 33,752 (June 25, 2012). The joint regulation conducted by both the prosecutorial and adjudicative members of the agency is consistent with the Court's holding in *UFCW*, deferring to the agency's power to determine where to draw the line between prosecution and adjudication. *See UFCW*, 484 U.S. at 125-26.

Clark also claims support for his argument based on a 1986 Authority opinion, stating that the General Counsel's

power to settle complaints comes from the Authority. In 1986, the Department of Justice requested guidance from the Authority on three questions, including the issue before us— whether the General Counsel can unilaterally settle an unfair labor practice complaint. The Authority declined to issue a general policy statement answering all three questions, but did opine that among the "other powers" given to the General Counsel is the "full and final authority and responsibility, on behalf of the Authority . . . to enter into and approve the informal settlement of charges." *Decision on Request for General Statement of Policy or Guidance*, 23 F.L.R.A. 342, 344 (Sept. 10, 1986) (internal quotation marks omitted). Because this power comes from and is exercised on behalf of the Authority, Clark argues that the General Counsel's decision in this case is a final order of the Authority. But the Authority's opinion on this issue does not have the force of law. Under *Skidmore*, the deference it is owed "depend[s] on the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

We find that the Authority's cursory decision lacks any power to persuade. As noted, the Authority expressly indicated that the document was not intended to serve as general guidance. *See Decision on Request for General Statement of Policy or Guidance*, 23 F.L.R.A. at 342 ("The Authority . . . has determined that it does not satisfy the standards governing the issuance of general statements of policy or guidance."); *id.* at 346 ("[R]esolution of the questions presented would not have general applicability under the Statute."). Moreover, the Authority provided no support for its statement that the General Counsel's power to

engage in settlements stemmed from his or her authority to "exercise such other powers" prescribed by the Authority, and not from the inherent authority to "file and prosecute complaints." To the extent that we can surmise the Authority's reasoning, we assume that the Authority was relying on then-applicable precedent establishing that pre-hearing settlements of the General Counsel of the NLRB and the Authority were adjudicatory rather than prosecutorial. *See Int'l Ladies' Garment Workers Union, Local 415-475, AFL-CIO v. NLRB*, 501 F.2d 823 (D.C. Cir. 1974); *Am. Fed'n of Gov't Emps., AFL-CIO v. FLRA*, 785 F.2d 333 (D.C. Cir. 1986).[4] When the opinion was written, our cases effectively precluded the Authority from placing the power to settle disputes in the prosecutorial discretion of the General Counsel. Since that time, however, *UFCW* has abrogated those precedents by holding that NLRB informal settlements are not reviewable. We therefore discount the relevance of the Authority opinion because of this significant shift in the law and hold that the language in the outdated opinion cannot overcome the holdings of *Turgeon* and *UFCW*.

Clark also argues that the power given to the NLRB's General Counsel in the NLRA is more expansive than that of the Authority under the language of the FSLMRS. For

---

[4] When we first decided whether we had jurisdiction over the General Counsel's unilateral settlement of a complaint in the NLRB context, *Chevron* had not yet been decided. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). We therefore did not defer to the agency's regulation declining to provide for NLRB review. After *Chevron*, we decided the same issue in the Authority context, but looked only to our decision under the NLRA as a guide, based on the "substantially identical appeal provision[s]." *Am. Fed'n of Gov't Emps.*, 785 F.2d at 335 n.3.

example, the NLRB's General Counsel has "final authority, on behalf of the Board" with respect to broad categories of power, whereas the FSLMRS expressly limits the powers of the Authority's General Counsel to three narrow categories and nowhere states that he can act with final authority on his own. Because the statutory language differs, Clark argues that the two entities should be treated differently. This argument, however, runs counter to both our decision in *Turgeon* and the legislative history of the FSLMRS. *See Turgeon*, 677 F.2d at 940. We are bound by our own precedent and its recognition of the intent of Congress to model the Authority after the NLRB.

Clark has given us no reason to depart from our practice of treating the General Counsel of the NLRB and the General Counsel of the Authority as "essentially identical." *See* S. REP. NO. 95-969, at 106. In keeping with our NLRB precedent, we therefore hold that we lack jurisdiction to review a decision by the Authority's General Counsel affirming a settlement agreement before a hearing takes place.

III

The petition for review is dismissed for lack of subject-matter jurisdiction.