PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NATIONAL TREASURY EMPLOYEES
UNION,

*Petitioner,*

v.

No. 10-1857

FEDERAL LABOR RELATIONS
AUTHORITY,

*Respondent.*

On Petition for Review of an Order of
the Federal Labor Relations Authority
(FLRA-1: 0-AR-4212).

Argued: May 12, 2011

Decided: July 26, 2011

Before TRAXLER, Chief Judge, and GREGORY and
DAVIS, Circuit Judges.

Petition denied by published opinion. Judge Davis wrote the
opinion, in which Chief Judge Traxler and Judge Gregory
joined.

## COUNSEL

**ARGUED:** Richard John Bialczak, NATIONAL TREA-
SURY EMPLOYEES UNION, Washington, D.C., for Peti-

tioner. Rosa M. Koppel, FEDERAL LABOR RELATIONS AUTHORITY, Washington, D.C., for Respondent. **ON BRIEF:** Gregory O'Duden, General Counsel, Barbara A. Atkin, Deputy General Counsel, NATIONAL TREASURY EMPLOYEES UNION, Washington, D.C., for Petitioner. Joyce G. Friedman, FEDERAL LABOR RELATIONS AUTHORITY, Washington, D.C., for Respondent.

## OPINION

DAVIS, Circuit Judge:

The National Treasury Employees' Union ("NTEU" or "Union") seeks review of an adverse ruling by the Federal Labor Relations Authority ("FLRA" or "the Authority"). The Union filed a grievance alleging that the Internal Revenue Service ("IRS" or "Agency") was processing its members' dues revocation forms without following contractually-mandated procedures. When the Union and the Agency were unable to resolve the matter, they submitted the dispute to arbitration. Following a hearing, the arbitrator issued an award, sustaining in part and denying in part the Union's grievance. After the Agency and the Union filed exceptions to the arbitrator's award with the FLRA, the FLRA denied the parties' exceptions and confirmed the award in its entirety. We deny the Union's petition for review.

I.

As the exclusive representative for IRS employees, NTEU negotiated a collective bargaining agreement ("CBA") with the IRS that governed, among other issues, procedures for handling dues withholding and revocations. After the CBA expired without a successor agreement in place in June 2006, the IRS notified NTEU that it would no longer honor what it deemed to be permissive provisions of the CBA that it consid-

ered to be a violation of law or regulations, including Article 10, Sections 6.A.3 and 6.A.4, which governed revocation of dues withholding. Pursuant to Article 10, an employee's dues revocation could

> only be effected by submission of a completed [revocation form] that has been initialed by the chapter president or his or her designee. If the [form] is not initialed, the Employer shall return the [form] to the employee and direct the employee to the proper Union official for initialing.

J.A. 38 (hereinafter "union sign-off"). In effect for nearly 12 years, the union sign-off served two goals: (1) to provide the Union with an opportunity to learn why an employee wished to revoke membership and attempt to change her mind and (2) to facilitate budgeting for the upcoming fiscal year. On July 13, 2006, the IRS informed NTEU that the Agency would begin processing revocation forms even if such forms did not have a union sign-off; the Agency then notified employees of the change. Subsequently, during the annual two-week period for submission of revocation forms, the Agency processed approximately 1,000 forms without a union sign-off.

On July 14, 2006, the Union filed a grievance alleging that the Agency's decision to process the forms constituted a violation of Article 10 of the CBA, an unfair labor practice ("ULP") under 5 U.S.C. § 7116(a)(1), (2), and (5) of the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101-7135 ("Statute"),[1] and a violation of past practice. Fol-

---

[1]Section 7116(a)(1) makes it an unfair labor practice for an agency "to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter." 5 U.S.C. § 7116(a)(1). Section 7116(a)(2) makes it an unfair labor practice "to encourage or discourage membership in any labor organization by discrimination in connection with hiring, tenure, promotion, or other conditions of employment." 5 U.S.C. § 7116(a)(2). Section 7116(a)(5) makes it an unfair labor practice "to refuse to consult or negotiate in good faith with a labor organization as required by this chapter." 5 U.S.C. § 7116(a)(5).

lowing a hearing on November 22, 2006, the arbitrator issued an opinion and award on February 23, 2007, sustaining in part the Union's grievance. The arbitrator found that Article 10 was a lawful and mandatory provision that continued to be effective past the expiration of the CBA; thus, the Agency's decision to process revocation forms without a union sign-off violated Article 10 and constituted a ULP under the Statute. In finding that the Agency's actions violated the Statute, however, the arbitrator refused to find that the Agency's actions illegally interfered with or coerced employees in the exercise of their statutory rights. Because at least some employees might have changed their minds about their revocations had the IRS honored the union sign-off procedures, the arbitrator found that the Agency violated the Union's right to receive some dues.

As a remedy, the arbitrator ordered the Agency to follow the revocation procedures set out in Article 10 of the CBA, to post a notice admitting its statutory violations, and to pay 75% of the arbitration fees and expenses. While agreeing with the Union that a return to the status quo ante was the appropriate remedy, the arbitrator rejected the Union's demand for reinstatement of dues withholding and reimbursement to the Union for *all* employees whose revocation forms were processed without a union sign-off. The arbitrator found it "highly speculative to assume that all, or most, employees whose revocation forms were improperly processed would have withdrawn their revocations had Article 10 procedures been faithfully followed." J.A. 68. Instead, the arbitrator ordered the IRS to provide the Union with a list of employees who had revoked membership without the requisite union sign-off, stating that the Union could contact those employees about voluntarily reinstating their dues withholding. The arbitrator directed the IRS to process any reinstatement authorizations submitted as a result of the Union's contact with those employees, retroactively withhold dues from those employees, and pay those dues to the Union.

The parties filed timely exceptions to the arbitrator's award with the FLRA. The Agency argued that its decision not to honor the Article 10 revocation procedures was not contrary to law and that the arbitrator erred in finding its actions violated the CBA and constituted a ULP. NTEU excepted to the arbitrator's remedy, arguing that the decision not to reimburse the Union for dues of all employees whose revocation forms were improperly processed was contrary to law.

On May 28, 2010, FLRA issued a final decision and order rejecting both parties' exceptions. *National Treasury Employees Union and United States Dep't of Treasury Internal Revenue Service*, 64 F.L.R.A. 833 (2010). With respect to the IRS's exceptions, FLRA held that the negotiated union sign-off procedures were valid and that, in improperly processing revocation forms, the Agency violated the contract and committed a ULP. With respect to NTEU's exceptions, FLRA found that the Union had failed to provide support showing that full reimbursement was compelled by law. FLRA reviewed the arbitrator's decision pursuant to a deferential standard that directs affirmance of a remedy unless it is a "patent attempt to achieve means other than those that can properly be said to effectuate the policies of the Statute." 64 F.L.R.A. at 839. It found the remedy ordered by the arbitrator passed muster and confirmed the award.

We have jurisdiction under 5 U.S.C. § 7123(a)(1).

II.

This court will uphold the Authority's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *U.S. Dep't of Health and Human Servs. v. FLRA*, 844 F.2d 1087, 1090 (4th Cir. 1988) (en banc); *Nuclear Regulatory Comm'n v. FLRA*, 859 F.2d 302, 306 (4th Cir. 1988); 5 U.S.C. § 706(2)(A); 5 U.S.C. § 7123(c). While the Authority is entitled to considerable deference in exercising its mandate, the Supreme Court has cau-

tioned that courts must not "rubber-stamp . . . administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97 (1983) (citations and internal quotation marks omitted); *U.S. Immigration and Naturalization Service v. FLRA*, 4 F.3d 268, 271 (4th Cir. 1993). Notably, where we are reviewing the Authority's choice of remedy, the standard of review is "particularly narrow," as Congress has given the Authority broad discretion "to fashion appropriate remedies for an unfair labor practice." *NTEU v. FLRA*, 910 F.2d 964, 967 (D.C. Cir. 1990) (en banc); *see also Dep't of Commerce, Bureau of Census v. FLRA*, 976 F.2d 882, 885 (4th Cir. 1992). Thus, we will uphold the Authority's remedial order "'unless it can be shown that the order is a *patent attempt* to achieve ends other than those which can fairly be said to effectuate the policies of the Act.'" *NTEU v. FLRA*, 910 F.2d at 968 (citations and internal quotation marks omitted).

Here, the Authority upheld the arbitrator's remedy, finding that "[b]ecause the Union has failed to establish that its requested remedy was compelled by law, the Union has failed to establish that the Arbitrator committed legal error." 64 F.L.R.A. at 839. The FLRA found that the Union had failed to provide support for its contention that the arbitrator erred by considering the intent of the employees who improperly revoked their authorization for dues withholding. *Id.* In rejecting the Union's requested remedy, the arbitrator reasoned as follows:

> The fact that the Agency may have deprived the Union of a contractual opportunity to persuade employees—some of whom might have been receptive to the Union's efforts—to withdraw their revocations is not a lawful reason to deprive those employees who would have stuck with their original decision of their statutory right to freely withdraw their support from the Union.

J.A. 68.[2] The arbitrator nonetheless found that status quo ante relief required a "return to the point at which the improper action occurred" and ordered the Agency to permit the Union to contact the employees whose revocation forms were

---

[2]The arbitrator made passing reference to potential sovereign immunity concerns raised by the Union's requested remedy, but such concerns do not obtain here. The Agency had argued that sovereign immunity barred the remedy requested by the Union, citing *Department of Army v. FLRA*, 56 F.3d 273 (D.C. Cir. 1995). At oral argument before us, counsel for the FLRA argued that sovereign immunity was not a bar to the remedy requested in this case because the CBA between the IRS and the Union created a mechanism by which any dues the Agency failed to remit would be deducted from the employees' pay and would not impose upon the government fisc.

While we are somewhat skeptical of the correctness of the FLRA's reasoning in this regard, we need not address it here, as we conclude that the Union's requested remedy is of an equitable nature and thus falls outside the scope of the D.C. Circuit's analysis in *Department of Army*. In that case, the court determined that the remedy requested by the union constituted money damages for which the agency had not waived sovereign immunity. *Id.* at 276. The union there was seeking compensatory damages on behalf of its members for consequential losses (bank overdraft fees and interest) *incurred by its members* as a result of the agency's delayed payment of salaries to members/employees. In effect, the union's complaint could be characterized as a "class-action" of sorts, with the union attempting to assert damages claims against the government on behalf of a class consisting of its members; theoretically, each union member could have filed suit against the government for her loss.

The remedy requested by NTEU here is dramatically unlike that struck down in *Department of Army*. Here, the Union seeks reimbursement for dues payments it claims are owed *to it* by its members as a result of the IRS's actions. In no way can such a remedy be considered "a substitute for a consequential loss," but is rather "'the very thing'" to which the Union claims it is entitled. *See id.* (distinguishing between legal and equitable monetary awards). While the IRS did not take away money from the Union which it owed the Union, it *impeded* the Union's receipt of dues payments *owed to the Union* by members who were permitted to resign from the Union too easily. In short, the Union seeks to be restored to the position it would have occupied but for the IRS's wrongdoing. Thus, its requested remedy is a form of *restitution*, albeit in the form of a monetary award, as to which the government has waived sovereign immunity.

improperly processed, the very opportunity that had been lost as a result of the Agency's actions. J.A. 68. We discern no reason to disturb the remedy upheld by the Authority.

Section 7102 of the Statute gives employees the right to refrain from union participation "freely and without fear of penalty or reprisal." 5 U.S.C. § 7102. Section 7115 of the Statute allows employees to establish and to revoke dues withholding from their pay, subject only to the condition that the employee's assignment "may not be revoked for a period of 1 year." 5 U.S.C. § 7115(a). While the union and an agency may bargain for the specific procedures for implementing § 7115, the negotiated procedures may not infringe on the employees' right to "remain free to revoke their dues authorizations at annual intervals." *AFGE, AFL-CIO and Dep't of Veterans Affairs*, 51 F.L.R.A. 1427, 1433 (1996) (finding negotiated procedures at issue did not "interfere with, restrain or coerce employees in their exercise of rights" to freely revoke). *See also Felter v. Southern Pacific Co. et al.*, 359 U.S. 326 (1959) (concluding that revocation procedures in agreement with private sector employer unlawfully infringed on right of employees to revoke authorization after one year). While not all provisions specifying the manner in which an employee can revoke are unlawful restrictions, such provisions must not unduly burden the employee or effectively preclude her from exercising her right to revoke dues withholding authorization after one year. *AFGE, AFL-CIO and Dep't of Veterans Affairs*, 51 F.L.R.A. at 1435-37.

The majority of the cases cited by the Union before the Authority and in its brief to this court do not implicate the right of an employee to revoke her dues withholding authorization; instead, they turn on the failure of the employer to process dues assignments properly submitted by employees. *See Dep't of Treasury, U.S. Mint and AFGE, Mint Council*, 35 F.L.R.A. 1095, 1098 (1990); *Naval Underwater Systems Ctr. and Nat'l Ass'n of Gov't Employees*, 16 F.L.R.A. 1124, 1126 (1984); *Defense Logistics Agency and AFGE*, 5 F.L.R.A. 126

(1981); *Dep't of Energy and NTEU*, 1998 FLRA Lexis 228, at *7-8 (FLRA ALJ Dec. No. 138 Nov. 12, 1998).

The Union cites to only one case in which revocation was at issue. *Veterans Admin. Lakeside Med. Ctr. and Serv. Employees Int'l Union*, 12 F.L.R.A. 244, 247-48 (1983). In that case, the agency wrongfully processed dues revocations outside the annual period set out in the CBA. *Id.* The Authority's decision there, however, relied on the fact that the agency's decision to honor the revocations ran afoul of the only *statutory* condition imposed on revocation procedures: that an employee's dues withholding authorization could not be revoked for a period of one year. *Id.* at 246 (citing 5 U.S.C. §7115(a)). In fashioning a remedy, the Authority ordered the agency to reinstate dues withholding for each employee whose revocation was untimely under the CBA *and* "whose assignment *has not reached a date appropriate for termination* pursuant to section 7115(a) of the Statute." *Id.* at 247-48 (emphasis added). The Authority also ordered the agency to reimburse the union for dues "it would have received from the pay of bargaining unit employees but for the Respondent's effectuation of untimely submitted dues revocations." *Id.* Here, neither the Union nor the Agency argues that any of the revocation forms, despite being improperly filed, violated the one-year statutory bar on revocation. Thus, the circumstances presented in *Veterans Administration* are clearly distinguishable from the circumstances presented in this case, where the revocations processed by the Agency violated the CBA, but not the statutory condition on revocation. Consequently, the Authority did not act arbitrarily in sustaining a remedial order that differed somewhat from that at issue in *Veterans Administration*.

The Union fails to persuade us that it has a right to demand dues from the Agency for employees who voluntarily submitted revocation forms consistent with their statutory rights. *Cf. Felter*, 359 U.S. at 333-35 (stating that parties may not "treat as nullities revocation notices which are clearly intended as

such and about whose authenticity there is no dispute"). It is doubtful, at best, that *all* employees who voluntarily chose to submit timely revocations would have changed their minds if subject to the union sign-off procedure.[3] The arbitrator found that such an assumption by the Union "is purely speculative," and, consequently, his ordered remedy, which provided the Union with the opportunity to contact employees whose withholding was improperly revoked, was appropriate so as not to "deprive those employees who would have stuck with their original decision of their statutory right to freely withdraw their support from the Union." J.A. 67-68.

Because the Authority's decision upholding the arbitrator's award was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, we have no warrant to disturb the Authority's decision.

## III.

For the foregoing reasons, the petition for review is

*DENIED.*

---

[3]We candidly acknowledge that affording the Union an opportunity to *persuade* a former union member to *rescind* a dues revocation form that has already been processed by the Agency is not exactly the same opportunity afforded the Union by the collective bargaining agreement: an opportunity to *dissuade* a union member from *submitting* a dues revocation form before it is submitted to the Agency. Nevertheless, we are satisfied that the marginally-increased burden thus imposed on the Union does not undermine the efficacy of the remedial order sustained by the Authority in this case, or otherwise support the conclusion that the Authority abused its discretion in doing so.